IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JEFFREY A. KOZAK,                    §
                                     §
            Plaintiff,               §
                                     §
v.                                   §        CIVIL ACTION NO. H-03-4400
                                     §
MEDTRONIC, INC. and MEDTRONIC        §
SOFOMAR DANEK, INC.,                 §
                                     §
            Defendants.              §

MEMORANDUM AND ORDER

Pending are Defendants Medtronic, Inc.'s and Medtronic Sofamor Danek, Inc.'s Amended Motion for Partial Summary Judgment (Document No. 48) and Motion to Strike Plaintiff's Sur-Reply (Document No. 72). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the motions should be granted.[1]

I.  Background

Plaintiff Dr. Jeffrey A. Kozak ("Plaintiff") brings this action against Defendants Medtronic, Inc. ("Medtronic") and Medtronic Sofamor Danek, Inc. ("MSD") (collectively, "Defendants") for breach of contract, alleging that Defendants improperly refused to make royalty payments due and owing to Plaintiff based on sales of a spinal surgery device called the PYRAMID Plate. *See* Document

_____

[1] In light of this ruling, Defendants' Motion to Strike the Declaration of Paul M. Janicke (Document No. 60) is DENIED AS MOOT.

No. 31.  Plaintiff also alleges that Defendants breached a fiduciary or confidential duty owed to him by "failing to obtain the strongest possible patent protection for his anterior lumbar plate concept and by failing to vigorously prosecute [his] Patent Application," and that Defendants fraudulently or negligently made misrepresentations to him "with respect to his Patent Application and/or Defendants' desire to market an anterior lumbar plate." Id. ¶¶ 46-50, 52-53.[2]

Plaintiff, an orthopedic surgeon specializing in spinal reconstructive surgery, alleges that he "conceived of the concept for an anterior lumbar plate that could be installed at the L5 and S1 vertebrae" and approached Danek Medical, Inc. ("Danek"), a predecessor of MSD, "about the possibility of working together on that concept." Id. ¶¶ 9, 11, 16; see also Document No. 48 ex. J.[3] Although other anterior spinal plates existed, no plating system suitable for use in the lumbar region of the spine was being

---

[2] "A lumbar plate is a metal plate used in spinal surgery to join and stabilize two adjacent vertebrae.  The lumbar plate is typically attached to each vertebrae using a screw or screws.  An anterior lumbar plate is installed on the front, or anterior, side of the spine."  Document No. 31 at 3 n.1.

Plaintiff asserts additional claims that are not relevant to this memorandum and order.

[3] According to Defendants, MSD, not Medtronic, is the successor in interest to Danek; Medtronic is the parent corporation of MSD.  Document No. 48 at 2.  Because MSD and Medtronic are separate, distinct corporate entities, Defendants argue, there is no basis for imputing liability to Medtronic, and Medtronic is entitled to summary judgment on all claims against it.  Id.

marketed at the time. *See* Document No. 54 at 3; ex. B at 85.[4]
Danek was interested in Plaintiff's proposed product, and in April
1993, Plaintiff and Danek executed a Purchase Agreement (the
"Purchase Agreement"), whereby Plaintiff agreed to sell to Danek
his "Medical Device" in exchange for royalty payments once the
"Medical Device" was marketed.  *See* Document Nos. 31 ¶¶ 11, 13;
48 ex. B. ¶¶ 1.A, 4-5.  Thereafter, Plaintiff developed design
drawings and a prototype anterior lumbar plate device and worked
with Danek on refinements and variations to that device until mid-
1994, when Danek informed Plaintiff "that it was not going to
proceed further with the anterior lumbar plate project."  Document
No. 31 ¶ 17.[5]

     In May 2001, MSD entered into an agreement with Dr. Jean-
Charles LeHuec ("LeHuec"), a French spinal surgeon, to purchase
rights to LeHuec's "Invention," described in their agreement as
"any product, method or system relating to an anterior plate for
placement at L5-S1 incorporating a triangular design with a locking

---

     [4] Plaintiff does not contend that he himself invented the
general idea or concept of an anterior lumbar plate.  *See* Document
No. 46 ex. C at 46-48 ("Q: Okay.  Were you the first one to have
the concept of an anterior lumbar plate?  A: No.").

     [5] Neither Danek nor MSD ever resumed development or testing of
Plaintiff's prototype, but on October 25, 2000 MSD, pursuant to the
Purchase Agreement, filed a patent application "directed to
[Plaintiff's] lumbar plating concept."  Document No. 31 ¶¶ 15, 22.
Plaintiff's "Patent Application issued as United States Patent No.
6,740,088" B1 (the "Kozak Patent") on May 25, 2004.  *See* <u>id.</u>; *see
also* Document No. 54 ex. D.

screw mechanism." *See* Document No. 48 ex. C at 80; Document No. 54 exs. I at 15-17, J.    According to Defendants, LeHuec's plate was "developed by MSD independently of the concepts embodied in the device that was developed and tested with [Plaintiff] and that is the subject of [the] Purchase Agreement."  Document No. 54 ex. K. MSD began selling LeHuec's plate under the trade name PYRAMID (the "PYRAMID Plate") the following year.  *See* Document Nos. 31 ¶ 19; 48 at 1.

In his Second Amended Complaint, Plaintiff alleges that Defendants have breached the Purchase Agreement by refusing to pay to Plaintiff royalties based on Defendants' sales of the PYRAMID Plate.  Document No. 31 at ¶¶ 19, 27-28.  According to Plaintiff, the term "Medical Device" as used in the Purchase Agreement "clearly contemplates that an anterior lumbar plate was only an idea at the time that the Purchase Agreement was signed, with the design details to be finalized later."  Document No. 54 at 5. Thus, Plaintiff argues, the Purchase Agreement covers "the idea of an anterior lumbar plate [generally], rather than any specific embodiment of that idea."  <u>Id.</u> at 7; see also Document No. 48 ex. C at 96, 225, 245.  Plaintiff therefore contends that "[t]he plain language of the [Purchase Agreement] indicates that [Plaintiff] is entitled to receive a royalty for the PYRAMID Plate regardless of who actually perfected the design."  Document No. 54 at 11; *see also* Document No. 31 ¶ 19.

4

Defendants disagree and contend that the plain meaning of the Purchase Agreement demonstrates that the parties intended to pay to Plaintiff a royalty only if Danek/MSD commercialized and sold *his* anterior lumbar plate. *See* Document No. 48 at 18.  In other words, the term "Medical Device" refers only to the specific anterior lumbar plate developed by Plaintiff under the Purchase Agreement, along with improvements, enhancements, and modifications thereto, and does not cover the anterior lumbar plate designed by LeHuec and sold as the PYRAMID Plate.  <u>Id.</u> at 3, 5-7.  Because MSD never commercialized or sold any version of Plaintiff's anterior lumbar plate, Defendants argue, MSD has no obligation to pay to Plaintiff a royalty and is therefore entitled to summary judgment on Plaintiff's breach of contract claim.

Defendants also seek summary judgment on Plaintiff's breach of fiduciary duty, fraud, and negligent misrepresentation claims, arguing that there is no evidence (1) of a confidential relationship between Danek/MSD and Plaintiff, and (2) that Plaintiff took any action in reliance on any misrepresentation made by Defendants.

## II.  <u>Summary Judgment Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing

6

<u>Matsushita</u>, 106 S. Ct. at 1351).   On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u>  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III.  <u>Discussion</u>

### A.  <u>Plaintiff's Breach of Fiduciary Duty, Fraud, and Negligent Misrepresentation Claims</u>

Medtronic moves for summary judgment on the ground that it is not Danek's corporate successor and is therefore not a proper party to any of Plaintiff's claims.  The uncontroverted summary judgment evidence is that MSD is Medtronic's wholly owned subsidiary. *See* Document No. 48 ex. J.  In December 2001, Danek merged into MSD, with MSD assuming all of Danek's obligations, including its obligations under the Purchase Agreement. *See* Document No. 48 at 22-23; exs. K, L.  "Because there is no evidence that Medtronic and [MSD] have merged, that they 'are the business conduits or the alter ego of one another,' or that MSD is merely a 'sham or dummy' corporation," Medtronic argues, it is entitled to summary judgment on all claims asserted against it.  Document No. 48 at 23 (citing <u>Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo</u>, 578 S.W.2d 625, 631 (Tenn. 1979)).

7

In addition, both Defendants move for summary judgment on Plaintiff's breach of fiduciary duty claim, arguing that there is no evidence to support it, given that (1) Plaintiff was represented by an attorney with whom he consulted for advice on whether to sign the power of attorney related to the Kozak Patent application, which application Plaintiff had the opportunity to review before it was filed, (2) despite knowing about the PYRAMID Plate, Plaintiff signed the documents naming him the inventor of the anterior lumbar plate described in the Kozak Patent, and (3) despite knowing about the PYRAMID Plate, Plaintiff did not complain that the Kozak Patent claims were too narrow before he signed the power of attorney as inventor. *See* Document No. 48 at 23-24; ex. C at 241, 260, 262, 267-68.  Defendants also move for summary judgment on Plaintiff's fraud and negligent misrepresentation claims on the grounds that (1) Plaintiff admitted that he was not fraudulently induced into signing the Purchase Agreement, (2) Plaintiff admitted that he relied on his attorney for legal advice regarding the terms of the Purchase Agreement and the power of attorney for the Kozak Patent, and (3) Plaintiff has not otherwise presented evidence that he took any action in reliance on a misrepresentation made negligently or fraudulently by Defendants or that he suffered an injury as the result of any such reliance.  Id. at 24-25; ex. C at 227-29, 241.

In his response to the summary judgment motion, Plaintiff neither addresses these arguments nor presents any evidence in

support of his claims against Medtronic or in support of his breach of fiduciary duty, fraud, and negligent misrepresentation claims against MSD. *See* Document No. 54. Because Plaintiff failed to defend these claims, Defendants argue that he has not satisfied his summary judgment burden and that summary judgment should be granted for Defendants on those claims. *See* Document No. 59 at 2-3.

Two months after he responded to Defendants' summary judgment motion, however, Plaintiff--without leave of Court--filed a surreply in which he addressed for the first time the arguments raised by Defendants in their summary judgment motion. *See* Document No. 70. Plaintiff offers no explanation as to why he failed to defend the breach of fiduciary duty, fraud, and negligent misrepresentation claims in his response to the summary judgment motion, or why he failed to seek leave of Court before filing the surreply almost two months after the briefing on the summary judgment motion was completed. <u>Id.</u>

Defendants therefore move to strike the surreply as "an untimely attempt to add new arguments and evidence to the summary judgment record," thereby "sandbag[ging] Defendants at the last minute" by "withold[ing] summary judgment arguments and evidence from Defendants until after Defendants had completed their briefing." Document No. 72 at 3. Plaintiff has not responded to Defendants' motion to strike, and the motion is therefore deemed unopposed. *See* Local Rule 7.4 ("Failure to respond will be taken

9

as a representation of no opposition."). "The purpose for having a motion, response, and reply is to give the movant the final opportunity to be heard, and to rebut the nonmovant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." Murray v. TXU Corp., No. Civ. A. 3:03-CV-0888P, 2005 WL 1313412, at *4 (N.D. Tex. May 27, 2005) (citation omitted). "A sur-reply is appropriate by the non-movant only when the movant raises new legal theories or attempts to present new evidence at the reply stage." Id. Given that Defendants neither raised new arguments nor presented new evidence in their reply; that Plaintiff waited until the eve of docket call, almost two months after Defendants filed their reply, to file the surreply; that Plaintiff did not obtain leave to file the surreply or offer any explanation as to why the arguments made therein could not have been raised in his response; and that Plaintiff has not opposed Defendants' motion to strike the surreply, the Court concludes that the motion should be granted. Plaintiff's surreply is therefore STRICKEN.

Because Plaintiff has presented no summary judgment evidence against Medtronic, and filed no timely summary judgment evidence to support his breach of fiduciary duty, fraud, and negligent misrepresentation claims against MSD, Plaintiff has failed to raise so much as a genuine issue of material fact with respect to the

essential elements of those claims, and Defendants are therefore entitled to summary judgment on those claims as a matter of law.

B.   <u>Breach of Contract</u>

Defendants also move for summary judgment on Plaintiff's breach of contract claim.  Under Tennessee law,[6] the cardinal rule of contract interpretation is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles.  *See* <u>Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C</u>., 9 S.W.3d 79, 85 (Tenn. 1999) (citations omitted); <u>Rainey v. Stansell</u>, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992).  All provisions of the contract should be construed in harmony with each other, if such construction can be reasonably made, so as to promote consistency and to avoid repugnancy between the several provisions of a single contract.  <u>City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey</u>, 126 S.W.3d 897, 904 (Tenn. 2004); *see also* <u>D & E Constr. Co., Inc. v. Robert J. Denley Co., Inc.</u>, 38 S.W.3d 513, 519 (Tenn. 2001) ("[A] contract's provisions must be interpreted in the context of the entire contract, viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illustrate another.").  Moreover, the terms used in the contract "should be

---

[6] The Purchase Agreement contains a choice of law provision requiring the application of Tennessee law.  *See* Document No. 14 ex. B ¶ 14.

11

given their usual, natural, and ordinary meaning, and neither party is to be favored in the construction." *See* Cain P'ship Ltd. v. Pioneer Inv. Servs. Co., 914 S.W.2d 452, 464 (Tenn. 1996).

Tennessee law provides that the "interpretation of an unambiguous contract is a question of law for the court to decide." Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc., 368 F.3d 894, 898 (6th Cir. 2004); Bratton v. Bratton, 136 S.W.3d 595, 601 (Tenn. 2004) ("If a contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms."). Although Plaintiff and MSD offer conflicting interpretations of the Purchase Agreement, neither party claims that the Purchase Agreement is ambiguous. *See* Baptist, 368 F.3d at 897-98 ("A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions.") (quoting Int'l Flight Ctr. v. City of Murfreesboro, 45 S.W.3d 565, 570 n.5 (Tenn. Ct. App. 2000)). Rather, each party asserts that its interpretation is the only reasonable interpretation mandated by the plain language of the Purchase Agreement. *See* Document Nos. 48 at 13-18; 54 at 4-6, 11-12.

The Purchase Agreement states that Plaintiff "has developed a Medical Device," which "Danek desires to purchase" from Plaintiff.

12

*See* Document No. 48 ex. B. at 1.  Paragraph 1.A of the Purchase

Agreement defines the "Medical Device" as:

> [A]n anterior lumbar plating system used in connection
> with orthopedic and spinal surgery, which is described in
> Schedule A and, which in its various sizes will carry
> those catalog numbers set out on Schedule B hereto,
> together with any improvements, enhancements and
> modifications thereto.

Id. ¶ 1.A.[7]  Paragraph 2 of the Purchase Agreement, entitled

"Medical Device Characteristics and Components," states that

Plaintiff and Danek "agree that upon completion of the development

and testing of the Medical Device, the final plans, drawings, the

technical characteristics and individual components of the Medical

Device will be prepared and attached hereto as a Final Schedule A."

Id. ¶ 2.[8]  The Purchase Agreement further provides that Danek will

pay to Plaintiff a "Purchase Price for the Medical Device equal to

five percent (5%) of the Net Sales of the Medical Device," with

payments increasing to seven percent (7%) if Danek acquired a

patent on the Medical Device.  *See* id. ¶¶ 4-5.A.

---

[7] Schedule A of the Purchase Agreement, entitled "Medical
Device Description," contains only the words "Anterior Lumbar
Plating System."  *See* Document No. 48 ex. B at 11.  Likewise,
Schedule B, entitled "Medical Device Catalog Numbers," contains
only the words "TO BE DETERMINED."  Id. at 12.

[8] It is uncontroverted that no "Final Schedule A" exists
because development and testing of Plaintiff's anterior lumbar
plate were never completed.  *See* Document No. 54 at 5.

The plain language of the Purchase Agreement does not support Plaintiff's contention that he is entitled to a royalty on any anterior lumbar plate sold by MSD, regardless of the origin of its design.  Nothing in the Purchase Agreement indicates that the "Medical Device" Danek purchased from Plaintiff consisted of an abstract idea or concept of an anterior lumbar plate, in addition to the specific plate to be developed by Plaintiff.[9]  The Purchase Agreement contains no requirement that Danek must work exclusively with Plaintiff to develop an anterior lumbar plate.  Moreover, there is no provision in the Purchase Agreement that prohibited Danek from selling an anterior lumbar plate designed by someone other than Plaintiff and developed independently of Plaintiff's design.[10]  In sum, nothing in the Purchase Agreement requires MSD

_____

[9] In response to Medtronic's Request for Admissions, Plaintiff admitted that the word "concept" appears nowhere in the Purchase Agreement but stated that "it was [his] understanding that the parties to the Purchase Agreement intended for the Purchase Agreement to cover his 'concept' or 'idea' for an anterior lumbar plate *along with* the 'Medical Device' defined in the Purchase Agreement." *See* Document No. 48 ex. G at 2 (emphasis added).  The Purchase Agreement, however, states only that Plaintiff sold, and Danek purchased, Plaintiff's Medical Device.  Plaintiff's "understanding" departs from the plain language of the Purchase Agreement, which covers only the Medical Device, and is not a reasonable interpretation of the Purchase Agreement's terms.  *See* Burks v. Belz-Wilson Props., 958 S.W.2d 773, 777 (Tenn. Ct. App. 1997) ("[T]he court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written.").

[10] In fact, in the previously executed Confidentiality Agreement between Plaintiff and Danek, which was incorporated by

14

to pay royalties to Plaintiff for anything other than Plaintiff's anterior lumbar plate, together with improvements, enhancements, or modifications made to it.  Hence, the correct interpretation of the Purchase Agreement is that Plaintiff conveyed to Danek rights only to the anterior lumbar plate proposed by Plaintiff under the Purchase Agreement, and later patented by MSD, and any improvement, enhancement, or modification made to that particular anterior lumbar plate.

Plaintiff does not contend that he invented the PYRAMID Plate, that his plate and the PYRAMID Plate share the same design, or that his patent covers the PYRAMID Plate.  *See* Document No. 48 ex. C at 62-63, 80, 304-05, 312; *see also* Document No. 31 ¶ 22.  Moreover, Plaintiff testified during his deposition that the PYRAMID Plate is neither an improvement nor an enhancement of his anterior lumbar plate design.  Document No. 48 ex. C at 57, 60-61.  In fact, in Plaintiff's opinion, the PYRAMID Plate is actually inferior to Plaintiff's plate design.  Id. at 61.  Thus, Plaintiff is not entitled to receive royalty payments for sales of the PYRAMID Plate

---

reference into the Purchase Agreement, *see* Document No. 48 ex. B ¶ 10, Plaintiff specifically acknowledged and agreed "that Danek has been, is, and will continue to be engaged in various research and development projects, one or more of which may relate to [Plaintiff's anterior plating system]" and that nothing in the Confidentiality Agreement limited Danek's right "to continue those projects or to manufacture, have made, commercialize, market, or sell any product developed as a result of those projects without any obligation (financial or otherwise) to [Plaintiff]," *see* id. ex. E ¶ 8.

unless the PYRAMID Plate was a modification of Plaintiff's anterior lumbar plate.

The term "modification" is not defined by the Purchase Agreement, and it must therefore be accorded its plain and ordinary meaning. Black's Law Dictionary defines "modification" as "[a] change to something; an alteration." BLACK'S LAW DICTIONARY 1025 (8th ed. 2004); *cf.* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1452 (3d ed. 1976) (defining "modification" as "the act or action of changing something without fundamentally altering it; a result of such partial change"); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2000) (defining "modification" as "[a] small alteration, adjustment, or limitation"). The term "modifications" as used in the Purchase Agreement is therefore construed to refer to minor alterations, adjustments, or changes made to the anterior lumbar plate designed by Plaintiff.

Although Plaintiff pleads that "[a]t a very minimum, the PYRAMID Plate constitutes a modification of the product concept under the Purchase Agreement," *see* Document No. 31 ¶ 19, the uncontroverted summary judgment evidence is that the PYRAMID Plate was introduced to MSD by LeHuec, *see* Document No. 54 ex. K. There is no evidence that LeHuec developed the PYRAMID Plate by making alterations, adjustments, or changes to Plaintiff's anterior lumbar plate design; indeed, there is no evidence that LeHuec ever saw or was otherwise aware of Plaintiff's anterior lumbar plate design.

16

*See* Document No. 14 ex. C at 292-93.[11]  To the contrary, the summary judgment evidence is that there are material differences between the PYRAMID Plate and the anterior lumbar plate developed by Plaintiff.  *See* Document No. 48 ex. C at 61-63, 91, 304-05.  In sum, Plaintiff has failed to raise so much as a genuine issue of material fact that the PYRAMID Plate is a modification to Plaintiff's anterior lumbar plate; rather, the summary judgment evidence establishes that the PYRAMID Plate, as Plaintiff himself testified, is "a plate of another type." *See* <u>id.</u> at 63.  There-fore, MSD has not breached the Purchase Agreement by not paying royalties to Plaintiff based on sales of the PYRAMID Plate, and Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.[12]

---

[11] Plaintiff presents summary judgment evidence that Brad Estes ("Estes"), the Danek engineer who worked with Plaintiff on his anterior lumbar plate project, discussed his work with, and showed a prototype of Plaintiff's plate to, Mingyan Liu ("Liu"), the Danek engineer who worked with LeHuec on the PYRAMID Plate.  *See* Document No. 54 exs. F at 22-23, 179; S at 111.  Contrary to Plaintiff's contention, however, the mere fact that Liu was aware of Plaintiff's anterior lumbar plate project is insufficient by itself to give rise to an inference that "the team that worked to finalize the PYRAMID Plate . . . used [Plaintiff]'s ideas and work product in their work on the PYRAMID Plate."  Document No. 54 at 11.

[12] Accordingly, the Court need not reach Defendants' alternative ground for summary judgment concerning the viability of Plaintiff's claim for future royalties.

IV.   <u>Order</u>

Accordingly, it is

ORDERED that Defendants Medtronic, Inc.'s and Medtronic Sofamor Danek Inc.'s Motion to Strike Plaintiff's Sur-Reply (Document No. 72) is GRANTED, and Plaintiff Jeffrey A. Kozak's Sur-Reply (Document No. 70) is STRICKEN.  It is further

ORDERED that Defendants' Amended Motion for Partial Summary Judgment (Document No. 48) is GRANTED.  Plaintiff's breach of contract, breach of fiduciary duty, fraud, and negligent misrepresentation claims against Defendant Medtronic Sofamor Danek, Inc., and all of Plaintiffs' claims against Defendant Medtronic, Inc. are DISMISSED on the merits.  Remaining to be tried are Plaintiff's misappropriation, misappropriation of trade secrets and/or confidential information, and breach of good faith and fair dealing claims against Defendant Medtronic Sofamor Danek, Inc., and Defendants' counterclaim for attorneys' fees.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 31st day of January, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

18