IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JEFFREY A. KOZAK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-03-4400 |
| § | |
| MEDTRONIC, INC. and MEDTRONIC § | |
| SOFAMOR DANEK, INC., § | |
| § | |
| Defendants. § | |

## ORDER DENYING RECONSIDERATION

Pending is Plaintiff's Motion to Clarify or Reconsider <u>Daubert</u> Rulings (Document No. 126), requesting reconsideration of a portion of the Order entered September 28, 2006 (Document No. 123) to clarify that David Leathers and Jeffrey Kozak may offer expert testimony on future damages as to Plaintiff's misappropriation of trade secrets claim.[1]  Defendant has filed its response in opposition.

## I.  Leathers

Defendant Medtronic Sofamor Danek, Inc. does not deny that future damages are allowable under Tennessee law for misappropriation of a trade secret, but objects that Leathers did

---

[1] Plaintiff also asks the Court to clarify that Plaintiff "may still offer expert evidence regarding the calculation of past damages for his breach of contract claim."  The September 28, 2006, Order did not foreclose expert testimony regarding damages from the time of the alleged breach of contract to the time of trial.

not form or disclose an expert opinion or report for future damages based on misappropriation of trade secrets.  Fed. R. Civ. P. 26(a)(2)(B) provides that an expert report "shall contain a *complete statement of all opinions to be expressed and the basis and reasons therefor*; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions . . ."  FED. R. CIV. P. 26(a)(2)(B) (emphasis added).  "Advisory Committee Notes to the 1993 Amendment to that Rule state that the quoted requirement is intended to reduce, or possibly even to eliminate, the need to depose experts--a plain indication that the report should stand on its own."  <u>Nilssen v. Motorola, Inc.</u>, No. 93 C 6333, 1998 WL 851493, at *2 (N.D. Ill. Dec. 1, 1998).  A party that fails, without substantial justification, to disclose information required by Rule 26(a) is not permitted to use the undisclosed material as evidence at trial unless it proves that its failure to disclose was harmless or substantially justified.  *See* FED. R. CIV. P. 37(c)(1).

The Court has carefully considered David Leathers's Expert Report and his Supplemental Expert Report.  The premise for both is set forth in the "Background" section of his report dated February 2, 2005 (which is supplemented by his February 22, 2005 report), detailing the Purchase Agreement with its royalty provisions, and proceeding to state, "I understand that Medtronic chose to ignore its contractual obligation to Dr. Kozak and began marketing an

2

anterior lumbar plate, known as the Pyramid Anterior Plate Fixation System ("Pyramid")." Everything that follows about damages in both of Leathers's reports is premised on the breach of contract claim. In neither report does Leathers state any "understanding" that Medtronic misappropriated from Dr. Kozak a trade secret, what that trade secret was, whether the trade secret was contained in the Pyramid Plate, or how one with Leathers's skill and experience would go about appraising the value of a trade secret. Instead, relying on the breach of contract premise, Leathers applies the Purchase Agreement's contracted royalty rate (for the sale of Plaintiff's anterior lumbar plating system) to projected future sales of Defendant's Pyramid Plate and to future generations of an anterior lumbar plate.[2]

Nowhere in his Reports does Leathers perform a damages analysis for misappropriation of trade secrets, nor does he opine on matters such as (1) the actual loss to Plaintiff caused by the use of his trade secret(s), (2) Defendant's unjust enrichment or profits from such use, or (3) a "reasonable royalty" for the use of Plaintiff's trade secret(s). *See* TENN. CODE ANN. § 47-25-1704(a)

---

[2] In his report dated February 2, 2005, Leathers stated that he calculated past damages "by applying the contracted 5% royalty rate to [Defendant]'s Pyramid sales during the period between April 2002 and May 2004, plus the contracted 7% post-patent royalty rate to [Defendant's] sales during the period between May 26, 2004 and trial." Document No. 98 ex. A ¶ 25. "Future lost royalties were determined by applying the contracted 7% royalty to future Pyramid [Plate] sales and *any* future generations of an anterior lumber [sic] plate system." *See* id. ¶ 26 (emphasis added).

(describing measure of damages available for misappropriation of trade secrets claim under Tennessee's Uniform Trade Secrets Act). Indeed, during his deposition, Leathers could not identify a specific feature in the Pyramid Plate that came from Plaintiff's design. *See* Document No. 129 ex. 2 at 121-22 (testifying that "I can't put my finger on a specific design to make that link between [Plaintiff's] concept to this specific design to the actual Pyramid Plate."). In short, Leathers has not disclosed or provided a future damages analysis based on misappropriation of trade secrets. *See* FED. R. CIV. P. 26(a)(2)(B) (expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor").

Plaintiff argues that testimony from Defendant's witnesses will show that the Purchase Agreement's contracted royalty rate is a reasonable benchmark for the calculation of misappropriation damages, and that "trade secret damages harmonize with contract damages." This is merely a "post-hoc rationalization" of Leathers's expert opinions on damages for breach of contract. Leathers himself in his Reports never opined that *any* royalty under the Purchase Agreement or otherwise was a "reasonable" measure of damages for the misappropriation of a trade secret. *See* Nilssen, 1998 WL 851493, at *2 (plaintiff could not "save [an expert's] report" by submitting a "post-hoc rationalization" that an expert considered certain factors in arriving at a reasonable royalty for

4

a misappropriation of trade secrets claim because the expert himself did not refer to those factors "either explicitly or implicitly" in his report; thus, plaintiff's "after-the-fact manufacture of additional support for [the expert's] opinion" failed, and the testimony would be excluded); *see also* FED. R. CIV. P. 26(a)(2)(B). In sum, because Leathers did not disclose or render an expert opinion as to future damages for the misappropriation of any identifiable trade secret(s) pursuant to Rule 26(a)(2)(B), the Court will not reconsider its order excluding Leathers's testimony on future damages.[3]

II. Dr. Kozak

Plaintiff also asks the Court to reconsider its order by allowing him to give expert testimony on future damages for

---

[3] Moreover, Defendant correctly points out that Plaintiff's Rule 26 Disclosures lack a computation of future damages based on misappropriation of trade secrets. *See* Document No. 129 ex. 1 at 6; FED. R. CIV. P. 26(a)(1)(C) ("[A] party must, without awaiting a discovery request, provide to other parties . . . a computation of any category of damages claimed by the disclosing party [and the documents] on which such computation is based"). The record reflects that Plaintiff did not supplement or correct the disclosure. *See* FED. R. CIV. P. 26(e)(1) (party has duty to supplement or correct disclosure upon learning that it is materially incomplete or incorrect). A party who fails to disclose information required by Rule 26(a) may not use the undisclosed material as evidence unless it proves that its failure to disclose was harmless or substantially justified. *See* FED. R. CIV. P. 37(c)(1); *see also* Design Strategy, Inc. v. Davis, 469 F.3d 284, 296-97 (2d Cir. 2006) (district court did not abuse its discretion in excluding evidence of lost profits as discovery sanction for failure to abide by Rule 26(a)(1)(C)).

misappropriation of trade secrets.  The principal question here is whether Dr. Kozak is actually an expert at formulating damage models such as the one he wants to present.

The admissibility of expert testimony is governed by Fed. R. Evid. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 and the principles announced in Daubert v. Merrell Dow Pharms., Inc., 113 S. Ct. 2786 (1993), apply to technical or specialized expert testimony.  *See* Kumho Tire Co., Ltd. v. Carmichael, 119 S. Ct. 1167, 1171 (1999); Black v. Food Lion, Inc., 171 F.3d 308, 310 (5th Cir. 1999).

The district court has a "gate-keeping" role when determining the admissibility of expert testimony.  *See* Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358, 371 (5th Cir. 2000).  The court must determine whether an expert is qualified and whether his testimony is reliable and relevant.  The purpose is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field." Kumho Tire, 119 S. Ct. at 1176. The Daubert inquiry is always fact-specific. *See* Black, 171 F.3d at 311.

Whether an expert is qualified depends on if the witness has "such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004) (quoting United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992)), *cert. denied*, 126 S. Ct. 1022 (2006); *see also* Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc., 438 F. Supp. 2d 696, 705 (E.D. Tex. 2006). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." Carroll v. Otis Elevator Co., 896 F.2d 210, 212 (7th Cir. 1990); *see also* Houston-Hines v. Houston Indep. Sch. Dist., No. H-04-3539, 2006 WL 897209, at *2-3 (S.D. Tex. Apr. 4, 2006) (Atlas, J.); Copley v. Smith & Nephew, Inc., No. H-97-2910, 2000 WL 223404, at *3-4 (S.D. Tex. Feb. 2, 2000) (Atlas, J.); Wilson v. Woods, 163 F.3d 935, 937 (5th Cir. 1999).

An expert's testimony does not always have to be based on scientific testing; it can be based on personal experience. *See* Kumho Tire, 119 S. Ct. at 1175-76. However, an expert's self-proclaimed accuracy is insufficient. *See* Gen. Elec. Co. v. Joiner,

118 S. Ct. 512, 519 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc), *cert. denied*, 119 S. Ct. 1454 (1999). Whether an expert's testimony is reliable requires "an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid." Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 668 (5th Cir. 1999). "The burden is on the party offering the expert testimony to establish by a preponderance of the evidence that it is admissible." Houston-Hines, 2006 WL 897209, at *3 (citing Moore, 151 F.3d at 276). *See also* Daubert, 113 S. Ct. at 2796 n.10 (under FED. R. EVID. 104(a), the proponent of expert testimony must establish the witness's qualifications by a preponderance of proof); United States v. Griffith, 118 F.3d 318, 322 (5th Cir. 1997) (same). "The party offering the challenged expert opinions need not, however, prove that the expert's testimony is correct." Houston-Hines, 2006 WL 897209, at *3 (quoting Moore, 151 F.3d at 276).

Plaintiff is an orthopedic surgeon with extensive training in biomedical engineering, and he has several medical inventions to his credit. Plaintiff contends that he is qualified to construct a future damages model that "project[s] the future adoption of MSD's anterior lumbar plating system" based on his "twenty-three

years of experience as an orthopedic surgeon, product consultant and inventor of interbody fusion devices . . ." *See* Document No. 107 at 1. Plaintiff submits a declaration on his experience as consultant as follows:

> For a number of years, I have served as a consultant to companies that design and market spinal implant products, and offer strategic planning advice regarding the market for such products. In order to provide these consulting services, I have studied the forces at work in that market, the growth rates of various products, the cost of the devices, and the other economic, medical and professional factors that affect the market for spinal implant products. I have advised companies regarding the behavior of the market, the effect of competing technology, and the development of products through multiple generations. In providing these services, I have relied upon my own professional experience, as well as authoritative sources.

*See* id. ex. 3 ¶ 2. Plaintiff's declaration is vague: it identifies no specific years, no specific companies, no specific market spinal implant products, and no specific advice, that would permit one to assess whether he has any experience or expertise applicable to this case. Indeed, his declaration, *curriculum vitae*, and deposition testimony at most show that he may have some experience in *marketing* of spinal implant products. However, Plaintiff has made no showing of expertise in *calculating* future damages or royalties based on projected future sales and market adoption/penetration rates of spinal products such as anterior lumbar plates. He does not claim ever before to have been employed by anyone to develop such a damages model, nor does he claim ever

9

to have prepared one for himself except for this case.  Moreover, there is no showing that his training to become an orthopedic surgeon and his study of biomedical engineering, or his becoming an inventor, qualifies him to formulate a complex damages model in this case.  Plaintiff points to no specialized knowledge, education, training, or experience, not even to attendance at a single technical course on the subject of economics or damage models, that would prepare him to make economic calculations of this nature.  *See* Carroll, 896 F.2d 210, 212 (7th Cir. 1990) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony."); Copley, 2000 WL 223404, at *3 ("The issue before the Court is whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case.") (quoting Tanner v. Westbrook, 174 F.3d 542, 548 (5th Cir. 1999)); Houston-Hines, 2006 WL 897209, at *3 ("Although Mr. Simmons could conceivably be found qualified in a different case involving routine law enforcement activities, his lack of training and experience in a school situation leaves him unqualified to serve as an expert in this particular case."); Wilson, 163 F.3d at 938 (trial court did not err in refusing to qualify a witness as an "accident reconstructionist" where the record revealed that although he had done consulting work for

25 years in fire reconstruction and investigation, he had only recently shifted his professional emphasis to automobile accident reconstruction); Edmonds v. Illinois Cent. Gulf R.R. Co., 910 F.2d 1284, 1287 (5th Cir. 1990) (trial court erred in permitting clinical psychologist to testify that stress worsened plaintiff's preexisting heart condition since this was a medical issue "plainly beyond this witness's expertise in the field of psychology."); Taylor Pipeline, 438 F. Supp. 2d at 705-06 (witness with over 30 years of experience in the construction industry who acted as general contractor, subcontractor, and construction manager could testify as to the "quality or methods of construction," but he was not qualified as expert on construction law, though he attended four construction law seminars). Accordingly, the Court is unable to find from a preponderance of the evidence that Plaintiff is qualified in accordance with Rule 702 by specialized knowledge, education, training, or experience to render an admissible expert opinion on the calculation of future damages for the misappropriation of trade secrets.[4]

---

[4] Plaintiff's opinions also lack the type of intellectual rigor and reliability required for admission. Plaintiff concedes in his deposition that his opinions involve "two speculations" (that anterior lumbar plates will penetrate at least 20% of the market, and that the market will grow at a rate of 17.5%), and Plaintiff does not state how an accurate discount rate should have been calculated. These opinions are not sufficiently supported or reliable to render them admissible under Rule 702 and Daubert. *See* Black, 171 F.3d at 311 ("The overarching goal of Daubert's gate-keeping requirement . . . is to make certain that an expert, whether basing testimony upon professional studies or personal

For the foregoing reasons, it is

ORDERED that Plaintiff's Motion to Clarify or Reconsider <u>Daubert</u> Rulings (Document No. 126) to allow David Leathers and Jeffrey Kozak to testify as experts on future damages on the tort claim, is DENIED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 14th day of March, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") (citation omitted).